IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Parker Hannifin Corp.,** | **Case No. 1:19cv00617** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **Standard Motor Products, Inc.,** | **MEMORANDUM OPINION AND ORDER** |
| **Defendants** | |

Currently pending is Defendant Standard Motor Products, Inc.'s Motion to Certify Order for Interlocutory Appeal under 28 U.S.C. § 1292(b) and for a Stay Pending Proceedings Relating to Interlocutory Appeal. (Doc. No. 25.) Plaintiff Parker Hannifin Corp. filed a Brief in Opposition, to which Defendant replied. (Doc. Nos. 29, 31.) Plaintiff was then granted leave to file a sur-reply. (Doc. No. 33.)

For the following reasons, Defendant Standard Motor's Motion for Interlocutory Appeal and Stay (Doc. No. 25) is DENIED.

**I.   Relevant Background[1]**

   **A.   Factual Allegations**

On March 20, 2019, Plaintiff Parker Hannifin Corporation (hereinafter "Parker Hannifin" or "Parker") filed a Complaint in this Court against Defendant Standard Motor Products, Inc. (hereinafter "Standard Motor") on the basis of diversity jurisdiction, asserting claims for breach of contract (Counts I and II), breach of the duty to defend and settle (Count III), breach of the duty of

---

[1] Plaintiff's factual allegations are set forth at length in this Court's October 23, 2019 Memorandum Opinion & Order and will not be repeated in full herein. Rather, the Court will recite only those factual allegations necessary to a resolution of the instant Motion.

good faith and fair dealing (Count IV), breach of duty imposed by law (Count V), and declaratory judgment (Count VI). (Doc. No. 1.)

Parker Hannifin's claims arise out of the alleged breach of an agreement entered into by the parties in 1986 for the sale of Parker Hannifin's EIS Division to Standard Motor. This Division was engaged in the business of manufacturing brake parts for vehicle brake systems, including some products that were made using asbestos-containing friction lining from outside vendors. The 1986 Agreement contained provisions relating to assumption of liabilities, indemnification, and the duty to defend.

Of particular relevance, Parker Hannifin alleges that, in allocating liability arising out of post-Closing product liability claims, the 1986 Agreement expressly accounted for potential liabilities arising from asbestos claims and distinguished those claims from other product liability claims that did not involve asbestos. (Doc. No. 1 at ¶ 16.) With respect to asbestos claims, Parker Hannifin alleges that the Agreement is clear and unambiguous that Parker "agreed to assume 100% responsibility for any Asbestos Claim asserted in writing during the 15-year period following the Closing [i.e., from August 31, 1986 to August 31, 2001] (unless the claimant's first exposure to asbestos occurred after the Closing Date), and Standard Motor agreed … to 'assume and become directly and solely responsible for the payment or discharge of' any Asbestos Claims asserted in writing thereafter." (*Id*. at ¶ 18.) Parker further alleges that Section 9.1 of the 1986 Agreement contains indemnification and duty to defend provisions that encompass punitive damages claims. (*Id.* at ¶ 22.)

Parker Hannifin alleges that, after the Closing and until the fifteenth annual anniversary of the Closing Date (i.e, until August 31, 2001), Parker and Standard Motor "treated each EIS Asbestos

Claim to be an Excluded Liability, and thus Parker's sole responsibility, regardless of whether the plaintiff asserted that the entity liable for their injuries was Parker, Standard Motor, or both Parker and Standard Motor, and irrespective of the legal theories being pursued or the recoveries being sought." (*Id*. at ¶ 26.) Parker Hannifin further alleges that the complaints filed in these pre-August 31, 2001 Asbestos Claims "frequently sought punitive damages." (*Id*.) It maintains that, up until August 31, 2001, "Parker accepted full responsibility for hundreds of EIS Asbestos Claims, defending the suits, obtaining dismissals when possible, negotiating and paying settlements when necessary, and otherwise completely protecting Standard Motor and holding Standard Motor harmless." (*Id.* at ¶ 27.)

Parker Hannifin alleges that, after August 31, 2001 (and until November 2018), Standard Motor likewise treated each EIS Claim to be an Assumed Liability under the 1986 Agreement and "thus Standard Motor's sole responsibility, regardless of whether the plaintiff asserted that the entity liable for their injuries was Parker, Standard Motor, or both, and regardless of the types of specific claims alleged, the legal theories being pursued, or the recoveries being sought," including claims for punitive damages. (*Id.* at ¶ 29.)

According to the Complaint, then, the parties worked cooperatively and everything proceeded smoothly with respect to EIS asbestos-related claims for over thirty years. All of that changed, however, when a California jury returned a $6 million punitive damages award in favor of plaintiff in an asbestos case filed against Parker Hannifin and Standard Motor.

In October 2017, Plaintiff Barbara Barr filed suit in the Superior Court of the State of California, Alameda County, against both Parker Hannifin and Standard Motor, in addition to other defendants (hereinafter "the Barr Suit"). (*Id*. at ¶ 30.) Ms. Barr alleged that she had been exposed to

3

asbestos from asbestos-containing friction products from 1974 to 1988 and was subsequently diagnosed with mesothelioma. (*Id.* at ¶ 31.) Ms. Barr asserted claims for negligence, strict liability, negligent misrepresentation, and fraud by nondisclosure, and sought both compensatory and punitive damages. (*Id.* at ¶¶ 33, 34.)

Parker Hannifin was served with the complaint in the Barr Suit and, on November 13, 2017, tendered it to Standard Motor for handling as an Assumed Liability under the 1986 Agreement. (*Id.* at ¶ 36.) The tender letter "made clear that Parker was 'tendering 100% of Parker's defense'" to Standard Motor. (*Id.* at ¶ 37.) Standard Motor replied to and accepted Parker Hannifin's tender of the Barr Suit the same day. (*Id.* at ¶ 38.) According to the Complaint, "[a]t no time prior to the jury's verdict did Standard Motor ever take the position with Parker that any of the Barr Suit claims or damages were not Standard Motor's responsibility." (*Id.* at ¶ 47.) Parker Hannifin alleges Standard Motor proceeded to "control[] all aspects of the Barr Suit," including choosing counsel and determining how and when to negotiate with the plaintiff. (*Id*. at ¶ 42.)

On November 5, 2018, the jury returned a verdict on special interrogatories, finding Parker Hannifin and Standard Motor liable for Ms. Barr's mesothelioma under the theories of strict liability-design defect; strict liability- failure to warn; product liability- negligent failure to warn; and negligence. (*Id.* at ¶ 48.) The jury apportioned 85% responsibility for Ms. Barr's mesothelioma to "EIS brakes at Plaintiff's worksite" and found she suffered economic damages in the amount of $620,086.37 and non-economic damages in the amount of $8,000,000. (*Id.*) In special interrogatories asking whether plaintiff had sufficiently proven certain predicate facts to support an award of punitive damages against Standard Motor and Parker Hannifin, the jury answered "yes" as to Parker Hannifin and "no" as to Standard Motor. (*Id.* at ¶ 49.)

Parker Hannifin alleges that "[u]pon learning of the jury's verdict on November 5, 2018, Standard Motor suddenly attempted to reverse course . . . by claiming - for the first time ever - that Parker – not Standard Motor - was directly and solely responsible for any punitive damages that would be assessed by the jury." (*Id.* at ¶ 50.) It further alleges that Standard Motor asserted that the punitive damages claim against Parker Hannifin in the Barr Suit fell outside its duty to defend under the 1986 Agreement. (*Id*.) In response, Parker Hannifin demanded that Standard Motor "honor its obligations to pay 100% of the fees, costs, and indemnity to resolve the Barr Suit." (*Id*. at ¶ 52.)

On November 8, 2018, the jury reconvened and awarded punitive damages in the amount of $6,000,000. (*Id.* at ¶ 53.) The state trial court thereafter entered judgment against Standard Motor and Parker Hannifin in the amount of $7,588,423.35 and "from [Parker Hannifin] an additional $6,000,000," together with interest at 10% per year from November 8, 2018. (*Id*. at ¶ 54.)

Parker Hannifin filed an appeal of the Barr Suit award of punitive damages. Standard Motor, however, continues to claim that "(i) it is not responsible for any aspect of the punitive damages award in the Barr Suit, or any other ESI Asbestos Claim; and (ii) it will not protect Parker's rights on appeal from the Barr Suit award of punitive damages." (*Id.* at ¶ 56.)

Parker Hannifin's appeal of the Barr Suit punitive damages award remains pending in state court as of the date of this Opinion & Order.

### B.     Proceedings in the Instant Case

On June 5, 2019, Standard Motor Products filed a Motion to Dismiss or, in the alternative, Motion to Stay Proceedings. (Doc. No. 12.) Therein, Standard Motor argued that the Complaint should be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) or, in the alternative, for failure to state a claim upon relief could be granted pursuant to Fed. R. Civ. P. 12(b)(6)

5

with respect to all six of Parker Hannifin's claims. (*Id*.) In the alternative, Standard Motor requested the Court stay the instant proceedings. (*Id.*) Parker Hannifin filed a Brief in Opposition on August 19, 2019, to which Standard Motor replied on September 9, 2019. (Doc. Nos. 17, 18.) Parker Hannifin was later granted leave to file a sur-reply on September 16, 2019.[2] (Doc. No. 20.)

On October 23, 2019, the Court issued a lengthy Memorandum Opinion & Order granting in part and denying in part Standard Motor's Motion. (Doc. No. 24.) First, the Court denied Standard Motor's Motion to Dismiss for Lack of Personal Jurisdiction, finding that Standard Motor had sufficient contacts with the State of Ohio to establish the existence of specific jurisdiction under the Due Process Clause. (*Id*. at pp. 13-26.)

Next, the Court considered Standard's Motion to Dismiss for Failure to State a Claim. The Court began by analyzing Parker Hannifin's first and second counts jointly as breach of contract claims. Confining its review to the four corners of the parties' Agreement, the Court found that "the plain language of the parties' contract is clear and unambiguous that the Assumed Liabilities and Indemnification provisions include punitive damages claims arising from qualifying EIS Asbestos Claims." (*Id.* at p. 34.) The Court then rejected Standard Motor's argument that, if construed as applying to punitive damages, the Assumed Liabilities and Indemnification provisions were void as against Ohio public policy. (*Id.* at pp. 37-43.)

However, the Court agreed with Standard Motor that its alleged duty to indemnify Parker Hannifin for the Barr Suit punitive damages award, had not yet been triggered under the parties'

---

[2] In addition, on October 2, 2019, the Court ordered the parties to submit supplemental briefing regarding Parker Hannifin's Declaratory Judgment claim. (Doc. No. 21.) The parties timely complied on October 16, 2019. (Doc. Nos. 22, 23.)

6

Agreement because Parker Hannifin's appeal of that Suit remained pending in California state court. (*Id.* at p. 43-44.) The Court held as follows:

> The Court agrees with Standard Motor that, in light of the pending Barr Suit appeal, its duty to indemnify Parker Hannifin for the punitive damages award in that case has not yet been triggered under Section 9.3 of the Agreement. Thus, to the extent Counts I and II allege claims for breach of contract based on the duty to indemnify as to the Barr Suit punitive damages award, the Court agrees that those claims are not yet ripe.
>
> However, Count II also alleges that Standard Motor breached Section 9.1 of the Agreement when it "repudiated its obligation to fully defend Parker in connection with the appeal from the Barr Suit matter." (Doc. No. 1 at ¶ 73.) The Complaint further alleges that Standard Motor's breach of the duty to defend has caused damages to Parker, including (1) "the cost of the appeal bond for the punitive damages award, which [Standard Motor] has refused to pay;" and (2) the cost of defense counsel specially retained by Parker to ensure that appropriate actions are taken to defend Parker's interests in connection with the appeal in the Barr Suit and other EIS Asbestos Claims." (*Id.* at ¶ 75.) Standard Motor does not argue that Parker's breach of contract claim based on the duty to defend the punitive damages award in the Barr suit on appeal, is not ripe and, indeed, the Court finds that the allegations in the Complaint are sufficient to demonstrate the ripeness of that claim.
>
> Thus, the Court is faced with a situation where Counts I and II of the Complaint allege a claim that is ripe (i.e., breach of the duty to defend on appeal) and a claim that is not yet ripe (i.e., breach of the duty to indemnify as to the Barr Suit punitive damages award). Given the interdependence of these claims, the Court is not inclined to dismiss the breach of the duty to indemnify claim at this time. Rather, the Court will stay determination of Parker Hannifin's breach of the duty to indemnify claim until such time as that duty is triggered under Section 9.3 of the Agreement. The Court will, however, allow Parker Hannifin's breach of the duty to defend on appeal claim to proceed, as that claim is ripe for consideration at this time.

(*Id.* at pp. 44-45.) Likewise, with respect to Parker Hannifin's Declaratory Judgment claim (Count VI), the Court (1) stayed a determination of Parker Hannifin's request for declaratory relief with regard to Standard Motor's alleged duty to *indemnify* for the Barr Suit punitive damages award; but (2) allowed Parker Hannifin's request for a declaratory judgment that Standard Motor has a duty to *defend* the punitive damages award in the Barr Suit appeal, to proceed. (*Id.* at pp. 52- 63.)

7

The Court then went on to deny Standard Motor's Motion to Dismiss Count IV of the Complaint, which sets forth a claim for breach of the duty of good faith and fair dealing. In that Count, Parker Hannifin alleges that, in performing its obligations under the 1986 Agreement, Standard Motor owed to Parker a contractual duty of good faith and fair dealing, which included the duty to "inform Parker promptly, unambiguously, and at the outset of any limitations, qualifications, or conditions attached to [Standard Motor's] assumption of Parker's defense, by accepting Parker's defense subject to a clear and express reservation of rights." (Doc. No. 1 at ¶¶ 91, 92.) Parker Hannifin alleges that Standard Motor breached this "duty of prompt notification" when it undertook its defense of Parker in the Barr Suit without asserting any limitations, qualifications, or conditions, and without issuing a reservation of rights. (*Id*. at ¶¶ 94, 95.) The Court allowed this claim to proceed, explaining (in relevant part) as follows:

> The parties do not direct this Court's attention to any specific provision in the Agreement that expressly addresses the parties' obligations (if any) to notify each other of any limitations, qualifications, or conditions when accepting the tender of EIS Asbestos Claims pursuant to Section 7.4 [of the 1986 Agreement]. Parker Hannifin asserts that, when Standard Motor agreed to undertake Parker's defense in the Barr Suit pursuant to Section 7.4, it was subject to an implied duty of good faith and fair dealing that included the duty to promptly notify Parker of any limitations, qualifications, or conditions of its defense. Thus, the Court does not construe Count IV as asserting an independent cause of action apart from a breach of the underlying contract. Rather, in this Count, Parker Hannifin alleges that Standard Motor's alleged duty of good faith and fair dealing arises from its obligations under Section 7.4 of the 1986 Agreement itself; i.e., it "fills a contractual gap" in that provision regarding the parties' obligations to timely notify of any limitations when accepting the tender of an EIS Asbestos Claim. At least one Ohio court has recognized such a claim under analogous circumstances. *See Dietz-Britton*, 139 Ohio App.3d at 344-349 (finding a genuine issue of material fact as to whether defendant breached its duty of good faith in connection with its failure to timely reserve it rights in a manner that prejudiced plaintiff's ability to defend herself against a third-party fraud claim). At the 12(b)(6) stage, the Court finds Parker Hannifin's allegations to be sufficient to withstand dismissal.

8

(Doc. No. 24 at pp. 50-51) (footnotes omitted). Finally, the Court granted Standard Motor's Motion to Dismiss Counts III and V of the Complaint, which set forth claims for breach of the duty to defend and settle and breach of "duty imposed by law." (*Id.* at pp. 45-49, 52.)

On November 5, 2019, Standard Motor filed a "Motion to Certify Order for Interlocutory Appeal under 28 U.S.C. § 1292(b) and for a Stay Pending Proceedings Relating to Interlocutory Appeal." (Doc. No. 25.) Parker Hannifin filed a Brief in Opposition, to which Standard Motor replied. (Doc. Nos. 29, 31.) Parker Hannifin was then granted leave to file a sur-reply. (Doc. No. 33.)

Standard Motor's Motion is now ripe and ready for resolution.[3]

## II. Standard of Review

Standard Motor's Motion for interlocutory appeal is governed by 28 U.S.C. § 1292(b), which provides as follows:

> (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

---

[3] The Court conducted a status conference with counsel on November 7, 2019. At that time, the parties agreed that private mediation proceedings would be beneficial. (Doc. No. 28.) The Court ordered that mediation shall be completed by no later than January 31, 2020 and instructed the parties to submit a Joint Status Report by no later than February 7, 2020, advising the Court regarding the status of the mediation process. (*Id.*) The parties thereafter filed Joint Motions on February 10 and 21, 2020 to stay all deadlines for two weeks as they continued to pursue mediation of the instant matter. (Doc. Nos. 35, 36.) Ultimately, the parties advised the Court that they were unable to reach a resolution.

28 U.S.C. § 1292(b). Construing this statute, the Sixth Circuit has held that "[t]he district court may certify an order for interlocutory appeal if it is 'of the opinion' that three conditions exist: '[1] the order involves a **controlling question of law** to which there is [2] **substantial ground for difference of opinion** and ... [3] **an immediate appeal may materially advance the termination of the litigation**.'" *In re Donald J. Trump*, 874 F.3d 948, 951 (6th Cir. 2017) (citing 28 U.S.C. § 1292(b)) (emphases in original).

Allowing for interlocutory appeal is generally disfavored and should be granted "sparingly." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). *See also Kraus v. Bd. of County Rd. Comm'rs*, 364 F.2d 919, 922 (6th Cir. 1966); *United States Security & Exchange Comm'n v. Geswein*, 2 F.Supp.3d 1074, 1086 (N.D. Ohio 2014); *Lang v. Crocker Park, LLC*, 2011 WL 3297865 at * 2 (N.D. Ohio July 29, 2011). An interlocutory appeal is "not intended as a vehicle to provide early review of difficult rulings in hard cases." *Infocision Mgmt. Corp. v. Found. for Moral Law, Inc.*, 2010 WL 4365514 at * 9 (N.D. Ohio Oct. 27, 2010).

The decision of whether to certify an interlocutory appeal pursuant to § 1292(b) lies within the discretion of the court. *See Infocision*, 2010 WL 4365514 at * 9. "[D]oubts regarding appealability . . . [should be] resolved in favor of finding that the interlocutory order is not appealable." *United States v. Stone*, 53 F.3d 141, 143-144 (6th Cir. 1995). *See also Geswein* 2 F.Supp.3d at 1086.

**III. Analysis**

In its Motion, Standard Motor asks this Court to certify an interlocutory appeal to the Sixth Circuit regarding the following questions: "Whether, in the absence of specific language, the indemnification provision in the parties' 1986 Agreement extends to punitive damages, and, if so,

whether that provision violates Ohio's public policy against the indemnification of punitive damages." (Doc. No. 25-1 at p. 5.)

In support of its request, Standard Motor argues that this Court's Memorandum Opinion & Order "involves threshold questions of Ohio contract law and public policy" which are controlling because "their resolution on appeal would materially affect the outcome of the litigation and result in significant efficiencies for the Court and the parties." (*Id.* at p. 2.) Standard Motor further asserts that there is substantial ground for difference of opinion because the questions presented are difficult and novel and "the Court's Order was not substantially guided by previous decisions of the Ohio Supreme Court and Court of Appeals." (*Id.*) Finally, Standard Motor maintains that an immediate appeal would materially advance the ultimate termination of the litigation. (*Id.*)

In response, Parker Hannifin argues that Standard Motor's Motion should be denied because it "fails to identify any controlling legal issues, fails to identify any conflicting authority, and fails to establish that an immediate interlocutory appeal would have any meaningful impact on the timing or scope of this litigation." (Doc. No. 29 at p. 1.) Parker asserts that, regardless of how Standard Motor's interlocutory appeal request were to be resolved, "Parker will proceed with discovery and to trial with respect to its remaining claims" and "[e]vidence relating to those claims will reinforce and galvanize the Court's rulings" with respect to Parker's breach of contract claims based on the failure to indemnify. (*Id.*) Parker Hannifin maintains that "the appropriate course here is to complete the entire case and then let an appeal proceed on all issues." (*Id.*)

For the following reasons, Standard Motor's Motion is denied. Even if the Court were to conclude that there is a "substantial ground for difference of opinion" regarding the issues identified

11

by Standard Motor, the Court finds that Standard Motor's stated issues do not present "controlling questions of law."

A question of law is controlling if it "could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d at 351. *See also In re Trump,* 874 F.3d at 951. As the Sixth Circuit has explained,"'[t]he resolution of an issue need not necessarily terminate an action or 'have precedential value for a number of pending cases' to be 'controlling.'" *In re Baker & Getty Financial Services, Inc*., 954 F.2d 1169, fn 8 (6th Cir. 1992) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2nd Cir. 1990), *vacated on other grounds by*, 937 F.2d 44 (1991)). "Rather, all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in district court." *Id*. (quoting *Arizona v. Ideal Basic Indus*. (*In re Cement Antitrust Litigation*), 673 F.2d 1020, 1026 (9th Cir. 1981)).

Standard Motor argues that the questions presented qualify as "controlling issues of law" because their resolution on appeal would materially affect the outcome of the litigation. (Doc. No. 25-1 at p. 7.) Standard Motor asserts that "[m]ost if not all of Parker's remaining claims are predicated on the question of whether the 1986 Agreement extends to punitive damages and, if so, whether the indemnification provision violates Ohio public policy." (*Id*.) Standard Motor argues that this is a "threshold issue, the resolution of which dramatically alters the scope and course of the parties' litigation."[4] (*Id*.)

---

[4] The Court notes, in passing, that the issues now identified by Standard Motor as being "threshold," "foundational" issues of critical importance to the instant lawsuit were given little attention in its Motion to Dismiss. The record reflects that Standard Motor devoted just one paragraph in its twenty-page Motion to Dismiss to the argument that the indemnification provision in the parties' 1986 Agreement did not extend to punitive damages in the absence of specific language to that effect. *See* Doc. No. 12-2 at pp. 9-10. It devoted only two paragraphs to the argument that, if construed to include punitive damages, the indemnification provision would contravene Ohio public policy. *Id.* at pp. 10-11.

Parker Hannifin argues that the issues identified by Standard Motor are not "controlling" because their resolution on interlocutory appeal would not materially affect the outcome of the litigation. (Doc. No. 29 at pp. 4-5.) Parker points out that this Court denied Standard Motor's Motion to Dismiss as it relates to two of Parker's claims; i.e., (1) breach of the duty to defend the Barr Suit punitive damages award on appeal; and (2) breach of the duty of good faith and fair dealing. (*Id*.) Parker asserts that each of these claims "provides a sufficient, independent basis for the Sixth Circuit to affirm a verdict in Parker's favor against [Standard Motor Products] relating to defense costs incurred by, and damages awarded against, Parker in connection with the Barr Suit." (*Id*.) Thus, Parker maintains that a ruling by the Sixth Circuit would not determine the outcome of this litigation as a whole because, regardless, "the parties would proceed with discovery [on Parker's remaining claims], the scope of which will be coextensive with the scope of discovery relating to" Parker's breach of the duty to indemnify claim.[5] (*Id*.)

In its reply, Standard Motor argues that "the same legal issue cuts across both" Parker's breach of the duty to indemnify and breach of the duty to defend claims. (Doc. No. 31 at p. 4.) Standard Motor further asserts that the issue also "implicates" Parker's breach of the duty of good faith and

---

[5] Parker further argues that, even respect to its breach of the duty to indemnify claims, Standard Motor's stated issues are not "controlling" questions of law because Parker raised additional arguments in support of this claim that were not addressed by this Court. (*Id*. at pp. 6-9.) Parker maintains that extrinsic evidence will be adduced through discovery that will provide additional, alternative grounds for the Sixth Circuit to affirm this Court's ruling. (*Id.* at p. 6.) "Because that evidence is not in the record at this juncture as it concerns SMP's Motion to Certify, the Court's ruling that SMP has a contractual indemnification obligation to Parker is not a controlling legal issue appropriate for immediate interlocutory appellate review." (*Id*.) In response, Standard Motor asserts that Parker's argument is without merit because any such extrinsic evidence is "irrelevant and inadmissible." (Doc. No. 31 at p. 11.) Specifically, Standard Motor argues that "under the current law of the case, the court has already determined as a matter of law that the 1986 Agreement unambiguously so applies, and Parker cannot seriously contend that any course-of-dealing evidence is somehow relevant to whether indemnifying against punitive damages is contrary to Ohio public policy." (*Id*. at pp. 10-11.) Because the Court denies Standard Motor's Motion on different grounds, the Court need not address the parties' arguments with respect to the evaluation of extrinsic evidence at this time.

13

fair dealing and declaratory judgment claims because those claims are dependent on an enforceable contractual indemnification provision. (*Id.* at p. 5.) Standard Motor argues that its stated issues for interlocutory appeal are threshold issues and that a reversal by the Sixth Circuit would either terminate the entire case or "streamline the case to a subset of Parker's remaining claims and/or crystallize the extent to which the parties' extrinsic evidence may or may not be relevant to whatever claims remain." (*Id.* at p. 6.)

For the following reasons, the Court finds that the issues identified by Standard Motors in its Motion do not constitute "controlling" questions of law. First, as stated above, this Court stayed Plaintiff's breach of contract claims to the extent they were predicated on the duty to indemnify for the Barr Suit punitive damages award on the grounds they were not yet ripe in light of the pending appeal of that award in California state court.[6] According to the state court docket, that appeal remains pending before the California Court of Appeals. *See Barr v. Parker-Hannifin Corp.*, Case No. A156632 (Cal. Ct. App. 1st Dist.), Docket, available at https://appellatecases.courtinfo.ca.gov. As both parties appear to acknowledge, it is possible that the Barr Suit punitive damages award will be overturned on appeal, thus rendering moot Parker Hannifin's breach of contract claims based on the duty to indemnify. Indeed, Standard Motor explicitly recognized as much in its Motion to Dismiss, arguing that "there is a strong possibility that the decision in the appeal of the Barr Suit could meaningfully impact Plaintiff's claims—or render them moot in their entirety." (Doc. No. 12-1 at p. 20.)

---

[6] It is the Court's understanding, based on the allegations in the Complaint, that Parker Hannifin has directly challenged the punitive damages award in the Barr Suit on appeal. *See* Doc. No. 1 at ¶ 68 (alleging that Parker Hannifin's damages include "the cost of the appeal bond for the punitive damages award in the Barr Suit").

Standard Motor cites no authority in its Motion for Interlocutory Appeal that would support certification of issues that are not yet ripe and may, in fact, become moot. The Court finds that, under the circumstances presented, it would be premature and potentially wasteful to certify these issues for appeal. Indeed, if the Court were to certify these issues and the California appellate court were to later overturn the punitive damages award, an interlocutory appeal would have been for naught.

The Court further finds that Standard Motor has not demonstrated that its stated issues (i.e., whether the indemnification provision extends to punitive damages and if so whether that provision violates Ohio public policy) are "controlling" with respect to Parker's remaining claims. As noted above, this Court denied Standard Motor's Motion to Dismiss with respect to Parker Hannifin's (1) breach of contract claim relating to the duty to defend the Barr Suit punitive damages award on appeal; and (2) breach of the duty of good faith and fair dealing claim. As Parker correctly notes, Parker's breach of the duty to defend claim is based, at least in part, on the parties' nearly thirty-year course of performance, during which Parker and Standard Motor each routinely defended asbestos cases under the 1986 Agreement involving punitive damages claims. (Doc. No. 1 at ¶¶ 26-29.) Parker's breach of the duty of good faith and fair dealing claim is based on Standard Motor's alleged failure, at any point in time prior to the Barr Suit jury verdict, to reserve its rights or otherwise advise Parker that it believed punitive damages were not Standard Motor's responsibility under that Agreement. (*Id.* at ¶ 47.) Both of these claims are distinct from Parker's breach of the duty to indemnify claim and will be further developed during discovery. Moreover, at a minimum, Parker's breach of the duty to defend claim provides a potential basis for a judgment in Parker's favor independent from its breach of the duty to indemnify claim.

Notably, Standard Motor has not sought interlocutory appeal with respect to this Court's denial of its Motion to Dismiss Parker's breach of the duty to defend claim. This appears to be at least an implicit acknowledgment that, on the facts alleged in the instant case, Standard Motor's duty to defend is, in fact, separate and distinct from its duty to indemnify. Moreover, aside from vaguely arguing that the issues on which it seeks interlocutory appeal "cut across" or "implicate" Parker's remaining claims, Standard Motor fails to sufficiently explain how or why they are "controlling" with respect to those claims. As such, and under the circumstances presented, Standard Motor has failed to demonstrate that its stated issues are "controlling" with respect to Parker's claims of breach of the duty to defend and breach of the duty of good faith and fair dealing.

In light of the above, the Court finds that Standard Motor has failed to demonstrate that resolution of the stated issues would materially affect the outcome of the litigation. With regard to Parker's breach of the duty to indemnify claims, those claims are not yet ripe and may be rendered moot as a result of the California state court appeal. With regard to Parker's breach of the duty to defend and breach of the duty of good faith and fair dealing claims, Standard Motor has not demonstrated that resolution of its stated issues would materially affect those claims. Given that the litigation would "be conducted in substantially the same manner" whether the Sixth Circuit agreed with Standard Motor as to its stated issues or not, the Court finds that an interlocutory appeal cannot be said to materially affect the outcome of the instant case. *See e.g., In re General Motors LLC*, 2019 WL 8403402 at * 1 (6th Cir. Sept. 25, 2019) (denying petition for interlocutory appeal where "other questions of law and fact . . . still permeate[d] [plaintiff's] claims" regardless of whether the Sixth Circuit agreed with defendant or not with respect to the issue on appeal).

For similar reasons, the Court finds that certification would not materially advance the litigation. This condition is satisfied where appellate review could "appreciably shorten the time, effort, and expense exhausted between the filing of a lawsuit and its termination." *Trimble v. Bobby*, 2011 WL 1982919 at * 2 (N.D. Ohio May 20, 2011). *See also Adell v Cellco Partnership*, 2019 WL 5285627 at * 2 (N.D. Ohio Oct. 18, 2019). However, "when litigation will be conducted in substantially the same manner regardless of [the Court's decision], the appeal cannot be said to materially advance the termination of the litigation." *In re City of Memphis*, 293 F.3d 351. *See also Geswein*, 2 F.Supp.3d at 1088.

Here, the Court finds that allowing an interlocutory appeal would unduly delay the ultimate progression of the litigation. As discussed above, the particular issues identified by Standard Motor are not dispositive of the case and the risk that the Court's decision will be reversed is "not unique to this proceeding." *Trimble,* 2011 WL 1982919 at * 2. Rather, the Court finds that, under the circumstances presented, the better practice is to proceed with discovery and motion practice on Parker's remaining claims, await the California state court decision in the Barr Suit appeal, and then let an appeal proceed on all issues.

Accordingly, and for all the reasons set forth above, Standard Motor's Motion to Certify Order for Interlocutory Appeal and for a Stay (Doc. No. 25) is DENIED.

## IV. Conclusion

For all the reasons set forth above, Standard Motor's Motion to Certify Order for Interlocutory Appeal and for a Stay (Doc. No. 25) is DENIED.

**IT IS SO ORDERED.**

                                         *s/Pamela A. Barker*
                                         PAMELA A. BARKER
Date:  April 23, 2020                 U. S. DISTRICT JUDGE